UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VINCENT CREHAN, *et al.*,

      Plaintiffs,

      v.

JEFFREY B. RICHARDSON, *et al.*,

      Defendants.

21-CV-1201-LJV
DECISION & ORDER

---

On October 12, 2021, Vincent Crehan and Kathryn Ehrig, two former employees of Niagara Frontier Transit Metro System, Inc. ("NFTA Metro"), commenced this action in New York State Supreme Court, Erie County. Docket Item 1-1. About a month later, defendants Jeffrey B. Richardson, Ron Giza, Karen Novo, Patrick Dalton, Amalgamated Transit Union Local 1342 Niagara Frontier Transit Metro System Pension Fund, and Amalgamated Transit Union Local 1342 Niagara Frontier Transit Metro System Pension Plan (collectively, the "Fund defendants") removed the case to this Court. Docket Item 1. The other defendants consented to removal. *Id*. at 8.

On December 2, 2021, Crehan and Ehrig moved to remand, arguing that this Court lacks subject matter jurisdiction. Docket Item 13. All defendants responded to the motion to remand on January 31, 2022; the Fund defendants also cross-moved to dismiss that same day. Docket Items 23-28. Two weeks later, Crehan and Ehrig replied in further support of their motion to remand and responded to the Fund defendants' motion to dismiss. Docket Items 29, 31. The plaintiffs and the Fund defendants then filed supplemental briefing on the motion to dismiss. *See* Docket Items 37, 39, 40.

For the reasons that follow, Crehan's and Ehrig's motion to remand is granted. The Court defers the pending motion to dismiss to the state court.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Crehan and Ehrig are former employees of NFTA Metro and former members of the Amalgamated Transit Union, Local 1342 ("Local 1342"). Docket Item 1-1 at ¶ 10. Because of their prior employment with NFTA Metro, Crehan and Ehrig are covered by the Amalgamated Transit Union Local 1342 Niagara Frontier Transit Metro System Pension Fund (the "Pension Fund"). *See id.* at ¶ 1; *see also* Docket Item 25-3 (the "Pension Fund Plan").

The Pension Fund is a "governmental plan" that was created "with the intent that the Plan [] be a qualified plan under Section 401 of the Internal Revenue Code." Docket Item 25-2 at 28-29. For that reason, the Pension Fund Plan provides that "[a]ll distributions . . . shall be determined and made in accordance with [Internal Revenue] Code Section 401(a)(9)." Docket Item 25-3 at 40. NFTA Metro and Local 1342 "further agree[d] to alter any provision of" the Pension Fund Plan "to the extent required by the Internal Revenue Service [("IRS")] for the purpose of continuing to meet the conditions

---

[1] The following facts are taken from the complaint and the materials attached to the motion to remand and the Fund defendants' motion to dismiss. "On a motion to remand for lack of subject matter jurisdiction, courts assume the truth of non-jurisdictional facts alleged in the complaint, but may consider materials outside [] the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*, 520 F. Supp. 3d 353, 356 (S.D.N.Y. 2021).

for qualification under Section 401 of the Internal Revenue Code." Docket Item 25-2 at 22.

In 2013, Crehan and Ehrig were elected to serve as Local 1342 President and Financial Secretary-Treasurer, respectively. Docket Item 1-1 at ¶¶ 12-13. To "fulfill [their] duties" as Local 1342 officers, Crehan and Ehrig "applied for, and [NFTA] Metro approved, a leave of absence from [NFTA] Metro commencing January 1, 2014." *Id.* at ¶¶ 14-15. Crehan and Ehrig then applied for "special early retirement" under the Pension Fund Plan. *Id.* at ¶¶ 16-24. Special early retirement is available to "[e]mployee[s] who ha[ve] attained age 57, and whose age and years of [c]redited [s]ervice total 87 or more." Docket Item 25-3 at 18.

After their applications for special early retirement were approved, Crehan and Ehrig began to receive pension distributions in March 2014 and April 2015, respectively. *See* Docket Item 1-1 at ¶¶ 16-24. At the time they began to receive pension distributions, Crehan and Ehrig still held their positions in the Local 1342 leadership. *See id.* at ¶¶ 12-13, 16-24. Crehan and Ehrig left their Local 1342 leadership posts when their terms expired in 2016. *Id.* at ¶¶ 12-13.

In 2019, the Trustees of the Pension Fund determined that Crehan's and Ehrig's early pension distributions were paid in error. *See* Docket Item 25-4. More specifically, the Trustees concluded that neither Crehan nor Ehrig had "'retired' within the meaning of the Plan and the Internal Revenue Code" when they left their positions at NFTA Metro to serve as President and Financial Secretary-Treasurer of Local 1342. *Id.* at 11. As a result, the Trustees determined that Crehan and Ehrig were not entitled to the

pension distributions that they had received while serving as Local 1342 officers.  *Id.* at 9-11.

After recognizing this purported error, the Trustees of the Pension Fund notified the IRS of the improper distributions.  In an application to the IRS's Voluntary Correction Program, defendant Mark Stulmaker explained the mistaken distribution and proposed that "no further action [] be undertaken to correct these errors."  *Id.* at 12.  The IRS disagreed, however, and maintained that the Pension Fund had to take further action to remain a qualified plan under the Internal Revenue Code.  *See* Docket Item 25-5 at 2-3 (proposing, among other "correct[ions]," a "reduction of future benefits for the[] participants").

Following some additional back-and-forth with the IRS, the Trustees of the Pension Fund proposed, and the IRS approved, "adjust[ing]" the future "monthly pension" distributions to Crehan and Ehrig to "recoup the overpayment."  Docket Item 25-6 at 11.  So in January 2021, Jeffrey Richardson, on behalf of the Trustees of the Pension Fund, notified Crehan and Ehrig that, "at the insistence of the Internal Revenue Service, . . . the Fund w[ould] commence recouping [the] pension benefits [that they] were paid during" their stints as Local 1342 President and Financial Secretary-Treasurer.  Docket Item 13-4 at 2, 7.  More specifically, Crehan's and Ehrig's future pension distributions would be reduced by $406.73 and $483.16, respectively, to "recoup[] the pension payments [they] received until the time [they] actually ceased working for [Local 1342]."  *Id.*

In July 2021, Crehan and Ehrig appealed that prospective reduction of their distributions.  Docket Item 13-5.  On August 16, 2021, the Trustees of the Pension Fund

4

rejected Crehan's and Ehrig's appeal and reiterated their determination that Crehan and Ehrig "did not retire under the meaning of the Plan when [they] began receiving early retirement pension benefits" in 2014 and 2015.  *Id.* at 3, 9.  Less than two months later, Crehan and Ehrig filed this action.  *See* Docket Item 1-1.

## LEGAL PRINCIPLES

Federal district courts "have original jurisdiction of all civil actions arising under" federal law.  28 U.S.C. § 1331.  Under 28 U.S.C. § 1441, a defendant may remove a case from state court if that case "could have been brought originally in [federal] court" under 28 U.S.C. § 1331.  *See Freeman v. Burlington Broads., Inc.*, 204 F.3d 311, 319 (2d Cir. 2000).  "In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper."  *Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 146 (W.D.N.Y. 2019).  "All doubts should be resolved against removability."  *Winter v. Novartis Pharms. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) (citing *Lupo v. Human Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

## DISCUSSION

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States.'"  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (quoting 28 U.S.C. § 1331).  "For statutory purposes, a case can 'arise under' federal law in two ways."  *Id.* (alterations omitted).  "Most directly, a case arises under federal law when federal law

5

creates the cause of action asserted." *Id.*  But "in certain cases" where a plaintiff has not asserted a federal cause of action, a claim nevertheless may arise under federal law "if the vindication of a state law right necessarily turns on a question of federal law." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014).  That narrower basis for jurisdiction, sometimes called the "substantial federal question doctrine, [] recognizes that 'in certain cases federal[ ]question jurisdiction will lie over state[ ]law claims that implicate significant federal issues.'" *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 393 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

The Fund defendants argue that both possibilities for jurisdiction are satisfied here: that this Court has subject matter jurisdiction both because Crehan and Ehrig "have asserted causes of action that arise directly under federal law" and because Crehan's and Ehrig's claims "implicate substantial and disputed federal questions" and therefore fall within the second, smaller jurisdictional bucket.[2]  Docket Item 26 at 16. Neither argument carries the day.

I. **FEDERAL LAW DOES NOT CREATE A CAUSE OF ACTION.**

"In the mine run of cases, a suit arises under the law that creates the cause of action." *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 (2020) (alterations, citation, and internal quotation marks omitted).  So federal question jurisdiction under 28 U.S.C. § 1331 "is invoked by and large by plaintiffs pleading a cause of action created

---

[2] The remaining defendants join in the Fund defendants' arguments.  *See* Docket Item 23 at 2; Docket Item 28 at 1-2.

6

by federal law." *Grable*, 545 U.S. at 312; *see also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he vast majority of cases brought under the general federal[ ]question jurisdiction of the federal courts are those in which federal law creates the cause of action.").

The Fund defendants argue that the plaintiffs have "directly asserted federal claims" and that this case therefore falls within this more common category of federal question jurisdiction. *See* Docket Item 26 at 16-20. More specifically, the Fund defendants contend that the plaintiffs' first two "causes of action," requesting a declaratory judgment and a permanent injunction, *see* Docket Item 1-1 at ¶¶ 56-104, really are federal claims because they do not "exist[] independent of a plausible underlying basis for relief"—here, one predicated on federal law. *See* Docket Item 26 at 19.

This Court agrees that the plaintiffs' first two claims for a declaratory judgment and a permanent injunction are not standalone causes of action. *See Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012) (summary order) ("[A plaintiff] cannot maintain an action for a declaratory judgment without an underlying federal cause of action."); *KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) ("[A] request for injunctive relief is not a separate cause of action."). But that only raises the question of what exactly the underlying federal cause of action would be here. And on that score, the Fund defendants are silent.

The Fund defendants gesture toward IRS decisions and provisions of the Internal Revenue Code that may be implicated in this case. *See* Docket Item 26 at 16-20. But they do not argue that any of those decisions or statutory provisions create a federal

cause of action that the plaintiffs could have invoked to seek a declaratory judgment or a permanent injunction.[3]  And without some underlying federal cause of action, this Court does not have the general authority to declare whether or not a party has violated some federal law or regulation.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress."); *see also id.* at 287 ("Raising up causes of action where a statute has not created them may be a proper function for common[ ]law courts, but not for federal tribunals.").

At bottom, the Fund defendants' argument is not that Crehan's and Ehrig's first two claims are themselves federal causes of action; rather, it is that those claims raise substantial federal questions.  Because the plaintiffs have not pleaded any federal causes of action, and because the Fund defendants have not shown that any other federal cause of action supplies the basis for the plaintiffs' claims here, this case does not fall within the "vast majority" of cases arising under federal law.

### II.    CREHAN'S AND EHRIG'S CLAIMS DO NOT FALL WITHIN THE SPECIAL AND SMALL SECOND CATEGORY OF ARISING UNDER JURISDICTION.

Because Crehan and Ehrig have not invoked a federal cause of action here, their state law claims can proceed in this Court only if they fit within the "'special and small

---

[3] The fact that the plaintiffs seek a declaratory judgment does not alter this conclusion.  "[F]ederal courts, when determining declaratory judgment jurisdiction, often look to the character of the threatened action"—in other words, courts evaluate "whether a coercive action brought by the declaratory judgment defendant . . . would necessarily present a federal question."  *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (citations and internal quotation marks omitted).  Because the Fund defendants point to no federal cause of action that they could have brought here, it makes no difference whether this Court considers the declaratory judgment claim from the plaintiffs' perspective or the defendants'.

category' of cases in which arising under jurisdiction still lies."[4]  *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). "[T]he Supreme Court has been sparing in recognizing state law claims" that satisfy the requirements of this category.  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014); *see also id.* at 1020 ("signal[ing] caution in identifying the narrow category of state claims over which federal jurisdiction may be exercised").

For a state law claim to fall within this "special and small" category, that claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Id.* (quoting *Grable*, 545 U.S. at 313).

After considering the four *Grable* factors, this Court concludes that Crehan's and Ehrig's claims do not fall within this "special and small" category of arising under jurisdiction.

---

[4] Absent diversity jurisdiction, a state law claim also "may be removed to federal court . . . when Congress expressly so provides, . . . or when a federal statute wholly displaces the state[ ]law cause of action through complete pre-emption."  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see also Fracasse*, 747 F.3d at 144.  The defendants do not contend that those other circumstances are implicated here.

To start, this Court assumes that the claims satisfy the first two factors: the federal issues here are both necessarily raised and actually disputed. *See Grable*, 545 U.S. at 314. The crux of Crehan's and Ehrig's claims is that their early retirement was permissible under the terms of the Pension Fund Plan and the Internal Revenue Code and that they therefore are entitled to the pension distributions that they received during their tenure as Local 1342 officers. *See, e.g.*, Docket Item 1-1 at ¶ 56-86. In response, the Fund defendants contend that the "pension fund's decision to recoup the overpaid benefits was not only consistent with the terms of the pension plan and federal law but also compelled by the Internal Revenue Service." Docket Item 26 at 7. So that dispute squarely implicates the validity of the Trustees' determination in light of federal tax law—in other words, Crehan's and Ehrig's claims raise the question of whether they in fact retired within the meaning of federal law.

As in *Gunn*, however, the Fund defendants' argument "founders on *Grable*'s next requirement, [because] the federal issue in this case is not substantial in the relevant sense." *Gunn*, 568 U.S. at 260. For a federal issue raised in a state law claim to be substantial, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue." *Id.* (emphasis in original) (alterations omitted). Instead, "[t]he substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole." *Id.*

In *Grable*, the Supreme Court found that the federal issue raised in that quiet title action—the requirements for notice under a specific federal statute—was sufficiently substantial for federal question jurisdiction. *See Grable*, 545 U.S. at 314-16. That

10

"question qualified as substantial[ because] its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assurance*, 547 U.S. at 700 (internal quotation marks omitted). In other words, the dispute in *Grable* "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Id.* (quoting Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 65 (2005 Supp.)).

After *Grable* was decided, however, the Supreme Court clarified—more than once—that disputes lacking the same broad implications as *Grable* are not "substantial" enough for federal question jurisdiction. *See Gunn*, 568 U.S. at 263-64; *Empire Healthchoice Assurance*, 547 U.S. at 700-01. In other words, the mere possibility of "'fact-bound and situation-specific' effects" that might result from the resolution of a state law claim "are not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire Healthchoice Assurance*, 547 U.S. at 701).

Here, Crehan's and Ehrig's claims present the sort of "fact-bound and situation-specific" dispute that is "poles apart from *Grable*." *Empire Healthchoice Assurance*, 547 U.S. at 700-01. Crehan and Ehrig maintain that they properly invoked the early retirement provision of the Pension Fund Plan and that they therefore could receive pension distributions during their service with Local 1342. Docket Item 1-1 at ¶¶ 14-32. And Crehan and Ehrig consequently argue that the Trustees of the Pension Fund have erroneously decided to recoup the pension distributions made under the Pension Fund Plan. *See, e.g.*, *id.* at ¶¶ 1, 35-55. Although the resolution of that dispute likely will involve the interpretation and application of federal tax law, that interpretation and

11

application of federal law arises in the specific context of Crehan's and Ehrig's entitlement to distributions under the Pension Fund Plan.

In other words, Crehan's and Ehrig's claims do not present a "pure issue of law" whose resolution could "thereafter [] govern numerous [other] cases." *See Empire Healthchoice Assurance*, 547 U.S. at 700. Crehan's and Ehrig's claims are not some freestanding challenge to federal law divorced of a specific factual application; instead, their case involves a particular dispute under the particular terms of a particular pension fund plan.[5] As a result, Crehan's and Ehrig's claims do not implicate the sort of substantial, generally applicable federal issue that would satisfy *Grable*'s third requirement. *Cf. N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) (finding a substantial federal issue where the qui tam relator's "claims raise[d] a threshold question of law relating to mortgage-backed securities generally"). And without a substantial federal issue, this Court lacks federal question jurisdiction. *See Gunn*, 568 U.S. at 258.

Although the absence of a substantial federal issue means that *Grable*'s fourth consideration is not dispositive, this Court concludes that "the appropriate balance of federal and state judicial responsibilities" likewise cuts against federal jurisdiction here. *See id.* at 264 (citation and internal quotation marks omitted). At its core, this is a breach of contract and breach of fiduciary duty case; and as noted above, the federal

---

[5] Indeed, it is not even clear that Crehan's and Ehrig's claims will have much of an effect on any future claims brought by those covered under this very Pension Fund Plan. After discovering the issue that led to this litigation, the "Trustees [] passed a board resolution confirming that no [Local 1342] officer while on leave from their employment with [NFTA] Metro will be entitled to a pension under the Plan." Docket Item 25-6 at 14. So the core issue raised in this case has, apparently, been corrected for future pension distributions.

issues here arise in the context of Crehan's and Ehrig's eligibility for distributions under the particular terms of the Pension Fund Plan.  Were this Court to conclude that federal question jurisdiction exists here, the mere presence of "federal tax implications" could "shift virtually every business transaction and trust distribution into federal court."  *Morgan Cnty. War Mem'l Hosp. ex rel. Bd. of Dirs. of War Mem'l Hosp. v. Baker*, 314 F. App'x 529, 535-36 (4th Cir. 2008) (per curiam) (reasoning that the presence of "federal tax implications" was insufficient for arising under jurisdiction because "[e]very pension plan, family trust, and economic decision must comply with federal tax laws").  And especially in light of the generally limited scope of federal question jurisdiction over state law claims, this Court declines to take that step and potentially alter the "balance of federal and state judicial responsibilities."  *Gunn*, 568 U.S. at 264.

For those reasons, this case is not the sort that can be "squeezed into the slim category *Grable* exemplifies."  *Empire Healthchoice Assurance*, 547 U.S. at 701; *see also id.* ("[I]t takes more than a federal element to open the arising under door." (citation and internal quotation marks omitted)).  Because the defendants have not established that this case satisfies *Grable*'s four factors, Crehan's and Ehrig's motion to remand is granted.

**CONCLUSION**

For the reasons stated above, the plaintiffs' motion to remand, Docket Item 13, is GRANTED. The case is REMANDED to New York State Supreme Court, Erie County. The Court defers the pending motion to dismiss to the state court. The Clerk of the Court shall close the case.

SO ORDERED.

Dated:   November 17, 2022
             Buffalo, New York

                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE